EDWARD N. SCRUGGS, Retired Circuit Judge.
This case concerns the condemnation of a van that was allegedly used in transporting 1,752 cans of beer in a dry county for the purpose of resale. § 28-4-285, Code 1975.
The owner and the driver of the van jointly filed a motion to suppress the evidence on the ground that the search and seizure here involved were invalid. After an ore tenus evidentiary trial before the circuit court upon that motion and upon the merits of the case, the trial court rendered a judgment which overruled the motion to suppress and condemned the vehicle.
Upon appeal, the defendants’ sole argument concerns the unconstitutionality of the search and seizure. Consequently, we shall limit the recital of facts herein to only those facts which pertain to that issue.
Joe Blankensop, a ten year beverage control agent for the A.B.C. Board offered the only evidence upon the question here involved. He was a most refreshing witness since he was apparently so straightforward, sincere, open, frank and honest in presenting his testimony. He testified that, approximately one month prior to June 12, 1981, another A.B.C. agent, Bill Ingram, whom he had known for ten years and who had provided reliable information to him on more than ten occasions which led to several arrests, told him “that there was a white % ton Chevrolet Van hauling into Winston County or through Winston County, and that one of the drivers or a driver probably would be Allen McGough.”
After agent Blankensop received that information, he began to look for a white three-quarter ton Chevrolet van. While working “transportation” at about 2:40 a.m. on June 12, 1981 in the company of the chief deputy sheriff, they were parked on the side of highway 195 in Winston County near the Walker County line. He observed a vehicle which matched the van’s description and he followed it. The van did not speed and it was driven in a normal, lawful manner at all times. The van did not appear to be loaded. It was not “setting low, or anything like that,” and there was nothing about it which “struck” the witness. He testified a number of times that he stopped the van solely because of the information which had been given to him by agent Ingram the previous month.
After stopping, Murray, the van’s driver, walked back towards the agent who asked Murray for his driver’s license, but he had none. The officer instructed Murray to “stand right there just a second, and I stepped around him and shined my flashlight” in the window of the van and saw Mrs. Murray. After another half step, the agent observed the beer behind the seats in plain view with no curtain or other obstruc *248 tion obscuring it. Agent Blankensop’s purpose or reason for shining his flashlight inside the van was for his personal safety as well as to see how much beer it contained.
He arrested the Murrays, charging them with transporting. There were 1,752 cans of beer in the van. Winston is one of Alabama’s dry counties.
Agent Blankensop did not personally know Murray or anyone whose name was furnished to him by agent Ingram as being a probable driver of the described van. He had no judgment as to the number of white Chevrolet vans which were situated in the state of Alabama, or in Walker or Winston counties.
Since he had worked there for the preceding ten years, he stated that he was familiar with the roads in Winston County, but he had no opinion of the number of routes which are used for hauling alcoholic beverages from Walker County into Winston County. He knows that highway 195 had been previously used for transporting prohibited beverages. Hauling is done at any and all times of the day or night; hence it would be normal or usual for alcoholic beverages to be transported in the early morning hours.
The fourth amendment protection against unreasonable searches and seizures applies in condemnation cases such as this. Berryhill v. State, 372 So.2d 355 (Ala.Civ.App.1979).
Our primary matter for decision is whether the stopping of the van was valid, for, if so, the plain view doctrine applied and the seizure of the van and beer was permissible. “If the officer first stopped the car, this of course requires a determination as to the lawfulness of the stopping....” LaFave, 2 Search and Seizure § 7.5, 591 (1978). The state seeks to justify the stopping and detention of the van for two reasons: first, that the agent had probable cause to do so and, second, that an authorized investigatory stop was made.

Probable Cause

To enable a law enforcement officer to validly stop a vehicle for the purpose of searching it, the officer must have probable cause to believe that the vehicle contains contraband or other evidence of a particular crime, or that it is involved in the commission of a crime. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). It is, therefore, necessary to determine whether, under all of the existent circumstances known by agent Blankensop at the time the van was stopped, he had reasonable cause to believe that that particular van was being so illegally utilized at that moment.
With regard to probable cause, in Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), it was stated:
“Evidence required to establish guilt is not necessary. On the other hand, good faith on the part of the arresting officers is not enough. Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed.” (Citations omitted.)
Here, agent Blankensop candidly admitted and stated repeatedly that the only reason that he stopped the van was because of the information which had been given to him one month earlier by the other officer. Agent Ingram did not specifically identify the van to him other than as previously stated and there is no evidence that he had any further or additional information concerning it at the time he stopped it.
The information which he possessed when the vehicle was stopped would have been totally insufficient as to probable cause to authorize the issuance of a search warrant. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Further, there was no specific information conveyed to him that a specific white three-quarter ton Chevrolet van would be used in illegally transporting prohibited liquors or beverages at a particular time, place or route or even within a designated reasonable specified *249 time frame within the entire confines of Winston County. Because of the lapse of time of one month between receiving the information and its utilization, if it was otherwise adequate, the related facts became too stale to supply the requisite probable cause. It is clear that the information which agent Ingram provided to him was not for the purpose of arresting anyone for a past crime but was concerned only with the possible future commission of offenses. In short, all of the facts and circumstances which were known to agent Blankensop at the time he stopped the van were insufficient to constitute probable cause.
Agent Ingram did not testify in the present case and there is no evidence of the underlying circumstances and sources thereof which gave rise to the sparse facts which he relayed to agent Blankensop. Here, the only evidence of possessed facts, circumstances or suspicions is that one month earlier Ingram described a van to Blankensop which apparently fit the description of the vehicle in question. Under similar circumstances, this has been held to be insufficient evidence to establish probable cause at a trial. Paschal v. State, 365 So.2d 681 (Ala.1978).
Just observing a white three-quarter ton Chevrolet van being lawfully driven upon a public highway by an unknown driver under no suspicious circumstances early in the morning one month after receiving the designated information did not constitute a reasonable cause to stop it. The facts did not warrant a man of reasonable caution to believe that the particular vehicle in question was being utilized in any unlawful activity on June 12,1981 on highway 195 in the edge of Winston County. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).
Accordingly, we hold that the requisite probable cause did not here exist to stop the vehicle, under existing facts and circumstances as known to and relied upon by agent Blankensop.

Investigatory Stop

“Police officers may stop a vehicle for investigative purposes based on specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant suspicion of criminal conduct on the part of the occupants of the vehicle. The authority to stop a moving vehicle based upon less than probable cause derives from Terry v. Ohio, 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889] (1968), as applied by the Supreme Court to vehicles in Adams v. Williams, 407 U.S. 143 [92 S.Ct. 1921, 32 L.Ed.2d 612] (1972) (parked vehicle), and U.S. v. Brignoni-Ponce, 422 U.S. 873 [95 S.Ct. 2574, 45 L.Ed.2d 607] (1974) (moving vehicle).
“The factors which can contribute to a reasonable suspicion to stop a vehicle are analogous to the factors justifying a stop and frisk of a suspect on the street. Among those factors are: the behavior of the suspect, such as erratic or evasive driving patterns; the appearance of the vehicle or its occupants; the time and location of the stop, such as a deserted area known as a narcotics pick-up point; and the experience of the police officer. While rarely will any one factor alone be sufficient to warrant a reasonable suspicion of criminal activity, most commonly several factors will appear in combination, thereby justifying a police officer in making an investigative stop.” (Footnotes omitted.)
Ringel, 1 Searches & Seizures, Arrests and Confessions (2d ed. 1981).
In this case there was no offensive driving of the van, there was no evidence of the appearance of the van’s occupants, and the agent apparently placed no particular importance upon the time and place of the stop. He did not testify as to any facts, or offer any explanation of facts whereby he, as an experienced officer, was able to perceive and articulate meaning into given conduct which would be wholly innocent to the untrained observer. The articulation of such matters was heavily depended upon in the three justice concurring opinion in United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 1880, 64 L.Ed.2d 497 (1980), *250 which is urged upon us by the state as being controlling.
Of the factors enumerated by Ringel, supra, which contribute to a reasonable suspicion to stop a vehicle, the only one here involved which had any significance to the officer was the apparent match in appearance of the van in question with the month-old general description of the vehicle given by Ingram. No other fact or reason was given, or relied upon, by agent Blankensop to stop the van.
Much of the rationale as to there being in this case a lack of probable cause likewise applies as to the invalidity of the stop for investigative purposes and will not be repeated. It suffices to state that, under the facts herein, we find no reasonable suspicion which authorized a stopping of the van for an investigatory search.
In his actions on the night in question, agent Blankensop apparently acted in good faith, but good faith is not enough. “If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate .... ” Beck v. Ohio, supra, 85 S.Ct. at 229. Neither is it adequate that contraband, beer, was discovered in the van after the vehicle was stopped. The stopping of the van may not be justified by the discovery of the beer through the subsequent unobstructed plain view of the interior of the van. Henry v. United States, supra.
The learned, respected and conscientious trial court erred in overruling the owner of the van’s motion to suppress and in its order condemning the vehicle. The final judgment of the circuit court is reversed and this cause is remanded for further proceedings not contrary to this decision.
The foregoing opinion was prepared by Retired Circuit Judge EDWARD N. SCRUGGS while serving on active duty status as a judge of this court under the provisions of section 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
REVERSED AND REMANDED.
WRIGHT, P.J., and BRADLEY, J., concur.
HOLMES, J., concurs in the result.